IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RABBI STANLEY KROLL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 19 C 3919 |
| | ) |
| COZEN O'CONNOR, a Pennsylvania | ) Judge John Z. Lee |
| Professional Corporation, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In this removed case, Rabbi Stanley Kroll has sued the law firm of Cozen O'Connor ("Cozen") for legal malpractice, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and fraudulent concealment. Cozen has moved to dismiss the complaint [15]. For the reasons provided below, Cozen's motion is granted in part and denied in part.

### Factual Background[1]

Kroll served as Chicago Loop Synagogue's ("CLS") full-time rabbi for nearly forty years. Am. Compl. ¶ 1, ECF No. 1-3. As part of his employment, Kroll entered into a contract with CLS in 1992 that guaranteed his salary through the end of 2022. *Id.* ¶ 2; *id.*, Ex. A, Agreement ¶ II(7).

---

[1] On a motion to dismiss, the court "accept[s] as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019).

### *The Deferred Compensation Plan*

As part of his compensation, CLS established a deferred compensation plan ("Plan") to fund Kroll's retirement. Am. Compl. ¶ 24; *id.*, Ex. B, Plan. The Plan required CLS to set aside annual contributions of $15,000 as deferred compensation, accruing not less than 7.5% interest per year until fully distributed to Kroll. *Id.* ¶ 25a–c; Plan ¶¶ 1, 2(b). Upon termination of his employment, the Plan provided Kroll the option of receiving either a lump sum or installment distributions over fifteen years. Am. Compl. ¶ 41a. The Plan permitted CLS to amend the Plan without Kroll's consent, but it prohibited any amendment that divested either credits to the account or rights to which Kroll would have been entitled to if the Plan had been terminated immediately prior to the effective date of the amendment. *Id.* ¶ 26; Plan ¶ 5.

In 2010, Kroll was provided a guaranteed schedule of benefits showing that, by December 31, 2016, the deferred compensation account would reach $866,445.95, and that, by January 1, 2020, the account would reach $1,111,177.20. Am. Compl. ¶ 28. In numerous conversations over the years, CLS's officers and directors repeatedly assured Kroll that the deferred compensation would be there for him when he retired. *Id.* ¶ 29.

### *The Alleged Misconduct*

CLS wanted to cut expenses in 2016, and its then-president-elect, Lee Zoldan, asked Kroll to retire at the end of 2016. *Id.* ¶ 31. Kroll agreed and stated that he would retire on December 31, 2016. *Id.* ¶ 34. He opted to receive his deferred compensation in fifteen annual installments. *Id.* ¶ 35.

CLS officers David Weiner and Dave Winner assured Kroll at the end of 2016 that he would receive the installment payments and annual interest on any undistributed funds. *Id.* ¶¶ 35, 43. Zoldan told Kroll on his last day that an unexplained tax issue had arisen with regard to the Plan, but she assured him that the issue would be solved. *Id.* ¶ 40.

At some point after Kroll retired, he discovered that CLS had not solved the tax issue and that the Plan had not been compliant with the applicable tax regulations since 2005. *Id.* ¶ 41. This noncompliance meant that, if Kroll received one penny of his deferred compensation, Kroll's entire vested deferred compensation account would be considered income, subject to income tax, and that Kroll would have to pay an additional twenty-percent tax as a penalty. *Id.* ¶ 41a–c. Kroll also learned that CLS had not aside sufficient funds in his retirement account to pay him as promised. *Id.* ¶ 38.

Adding insult to injury, Kroll also alleges that, in July 2017, Jeremy Glenn, one of Cozen's attorneys, told him that Cozen had drafted an enforceable amendment to the Plan, effective December 30, 2016, that purported to eliminate interest on all undistributed amounts. *Id.* ¶¶ 6a, 55, 64; *id.*, Ex. C, Amendment to the Stanley E. Kroll Deferred Compensation Plan ¶¶ 3–4 ("Amendment"), ECF No. 1-3.[2] According

---

[2] It may reasonably be inferred that, until this point, Kroll was unaware that CLS had retained Cozen in December 2016 to reduce his vested retirement benefits. *Id.* ¶¶ 51, 55, 82. Kroll alleges that Cozen had schemed with CLS to defraud him of his vested deferred compensation. *Id.* ¶ 82. According to Kroll, although Cozen knew there were serious tax issues regarding the Plan, it advised CLS not to reveal details about the issues until after Kroll resigned. *Id.* ¶ 83b.

3

to Kroll, Glenn used the purported enforceability of the amendment to coerce him into accepting 50% of what was due under the Plan. Am. Compl. ¶ 64.

### *The Lawsuit Against CLS and Settlement*

As a result of these developments, Kroll sued CLS in the Circuit Court of Cook County on August 18, 2017. *Id.* ¶ 10; *id.*, Ex. D, Settlement Agreement ¶ A, ECF No. 1-3 ("Settlement Agreement"). In May 2018, the parties settled the dispute, and the case was dismissed. Settlement Agreement ¶¶ C, 6, 18.

The settlement agreement included the following provision that purported to assign to Kroll any of CLS's claims against Cozen:

> 3. Assignment of Claim Against Cozen O'Connor. In connection with this Agreement, to the maximum extent permitted by law, CLS hereby assigns to Kroll any and all professional malpractice and/or negligence claim(s) or cause(s) of action it may have under a [sic] Illinois law against the Cozen O'Connor law firm and members of that firm (collectively "Cozen") concerning Cozen's services as attorneys for CLS involving the Stanley E. Kroll Deferred Compensation Plan and the December 30, 2016 Amendment thereto. CLS makes no warranty as to the existence or validity of this claim or its assignability.

Settlement Agreement ¶ 3. At some point thereafter, Kroll and Cozen entered into a tolling agreement. Am. Compl. ¶ 13. Kroll alleges that the tolling agreement expired on May 10, 2019. *Id.*

### *The Instant Lawsuit Against Cozen*

Kroll sued Cozen in the Circuit Court of Cook County on May 10, 2019, *id.* ¶ 14, and he amended the complaint on May 31, 2019, *see id.* at 1. In it, Kroll asserts a legal malpractice claim against Cozen on CLS's behalf (Count I). *Id.* ¶¶ 75–79. He

also brings his own claims of aiding and abetting fraud and breach of fiduciary duty (Counts II and III), as well as fraudulent concealment (Count IV). *Id.* ¶¶ 80–106.

Because Kroll is a citizen of Illinois and Cozen is a citizen of Pennsylvania, Cozen removed the case based on diversity jurisdiction under 28 U.S.C. §§ 1441(b), 1446(a). Notice of Removal, ECF No. 1. Cozen has moved to dismiss the amended complaint in its entirety.

## **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this way, the complaint must put the defendants on "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court "accept[s] well pleaded factual allegations as true" and "resolve[s] factual disputes and draw[s] reasonable inferences in the nonmovant's favor." *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019).

Under Rule 9(b), in "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* Such circumstances include the identity of the person who committed the fraud or mistake, the time, place, and content of the fraud or mistake, and the method by which it was

5

communicated. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). This is also known as the "who, what, when, where and how" standard. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). This requirement ensures that defendants have fair notice of a plaintiff's claims, providing an opportunity to frame their answers and defenses. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1230 (N.D. Ill. 1990). Nevertheless, "the particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim . . . ." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998).

## Analysis

Kroll asserts a legal malpractice claim against Cozen that was assigned to him by CLS as part of a settlement agreement, as well as his own claims against Cozen for aiding and abetting fraud, aiding and abetting breaches of fiduciary duty, and fraudulent concealment. Cozen has moved to dismiss all claims, as well as the request for punitive damages.

### I. Legal Malpractice by Assignment (Count I)

As a general matter, Illinois law—which governs the terms of the Settlement Agreement—prohibits the assignment of legal malpractice claims. *See Brandon Apparel Grp. v. Kirkland & Ellis*, 887 N.E.2d 748, 749 (Ill. App. Ct. 2008). Illinois courts have recognized "some very narrow exceptions," however. *Zohar Waterworks, LLC v. Jenner & Block, LLC*, No. 1-11-1142, 2012 WL 6962220, at *3 (Ill. App. Ct. May 16, 2012). The first exception is "when a client dies after filing a claim for legal

6

malpractice, [and] the claim passes to the client's estate." *Learning Curve Int'l, Inc. v. Seyfarth Shaw, LLP*, 911 N.E.2d 1073, 1080 (Ill. App. Ct. 2009) (citing *McGill v. Lazzaro*, 379 N.E.2d 16, 17 (Ill. App. Ct. 1978)). The second is "[i]f a bankruptcy estate owns a bankrupt person's claim for legal malpractice, then that estate has the power to assign that claim to the bankrupt person . . . ." *Id.* (citing *Hoth v. Stogsdill*, 569 N.E.2d 34, 40 (Ill. App. Ct. 1991)). The third occurs when a corporation assigns a legal malpractice claim to former shareholders, who are deemed to be the real parties in interest, as a minor part of a transfer of assets in a merger. *Id.* at 1081.

Kroll concedes that this case does not fall within any of the recognized exceptions. Nonetheless, he urges the Court to create an exception where a law firm's negligence in its representation of the assignor-employer indirectly injures the assignee-employee.

This Court's job is to predict how the Supreme Court of Illinois would decide the issue. *See Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015). In that regard, the Illinois appellate court's decision in *Gonzalez v. Profile Sanding Equip., Inc.*, 776 N.E.2d 667 (Ill. App. Ct. 2002), is informative as to how Illinois' highest state court would rule.

The plaintiff in *Gonzalez* sued a manufacturer of sanding equipment for the loss of his thumb and obtained a default judgment. *Id.* at 670. To obtain satisfaction of the judgment, the plaintiff moved for a turnover order requiring the defendant to assign its potential legal malpractice claim related to the default judgment. *Id.* In affirming the denial of the turnover order, the *Gonzalez* court stated:

> Illinois courts have held that legal malpractice claims are not assignable. The reason stems from the nature of the attorney-client relationship and public policy. The fiduciary relationship between an attorney and client is a personal and confidential one, requiring the attorney to exercise the utmost degree of fidelity, honesty and good faith. Illinois courts have reasoned that a malpractice suit is not appropriately brought by a stranger to that relationship and that allowing such assignments would commercialize legal malpractice suits, debase the legal profession, place an undue burden on . . . the legal profession [and] judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.

*Id.* at 681 (internal quotation marks and citations omitted). The court added:

> We think that this court has made its position clear on the issue of an attorney's liability to third parties. . . . What if defendant specifically authorized the conduct that plaintiff alleges was negligent? The trial court shrewdly noted that "[d]efendant's counsel would be unable to mention this fact without explicit waiver of the attorney-client privilege by defendant." In fact, as the trial court also noted, it is possible that plaintiff's motion seeks authorization to bring a legal malpractice claim on behalf of a satisfied client. In light of these concerns, we are unwilling to adopt plaintiff's position.

*Id.* at 682.

The same policy concerns identified in Gonzalez apply with equal force here. As in *Gonzalez*, Kroll is a stranger to CLS and Cozen's attorney-client relationship and was owed no duty by Cozen. And, although Kroll alleges he suffered injury from Cozen's actions, *Gonzalez*'s overarching policy concerns regarding jeopardizing the attorney-client relationship dissuade the Court from allowing assignment in this case. CLS's assignment of its legal malpractice claims did not explicitly waive the

attorney-client privilege. Moreover, it is possible that Kroll seeks to bring a legal malpractice claim on behalf of a satisfied client.

Kroll contends that a failure to create an exception in this case immunizes Cozen from liability for its actions. But, as indicated in *Gonzalez*, *id.* at 681, Illinois has had a long history of generally prohibiting the assignment of legal malpractice claims. What is more, Kroll presumably could have asserted claims against Cozen in his lawsuit against CLS, thereby incentivizing a global settlement with, and among, both defendants, while keeping their relationship intact.

For all of these reasons, the Court declines to recognize a new exception to the general rule that legal malpractice claims are not assignable in Illinois. Cozen's motion to dismiss on this ground is granted, and Count I is dismissed with prejudice.

## II. Statute of Limitations

Next, Cozen contends that Kroll's claims are barred by the two-year statute of limitations set forth in 735 Ill. Comp. Stat. 5/13-214.3(b). Section 13-214.3(b) provides: "An action for damages based on tort, contract, or otherwise . . . against an attorney arising out of an act or omission in the performance of professional services . . . must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." Kroll argues that the statute only applies to claims brought by clients against their lawyers, but the Illinois Supreme Court repudiated that argument in *Evanston Ins. Co. v. Riseborough*, 5 N.E.3d 158, 168 (Ill. 2014). Moreover, contrary to Kroll's views, section 13-214.3(b) applies where law firms are alleged to have aided and abetted

9

their client's malfeasance, see *Shrock v. Ungaretti & Harris Ltd.*, --- N.E.3d ----, No. 1-18-1698, 2019 WL 4673919, at *5–6 (Ill. App. Ct. Sept. 25, 2019), *appeal pending*, and where law firms are alleged to have acted fraudulently, see *Salon Grp., Inc. v. Salberg*, No. 00 C 1754, 2002 WL 1058120, at *2 (N.D. Ill. Mar. 29, 2002). Accordingly, the Court holds that the two-year statute of limitations under section 13-214.3(b) governs Kroll's claims against Cozen here. However, this is not the end of the matter.

A claim is subject to dismissal under Rule 12(b)(6) based on a statute of limitations only where the complaint establishes that the suit is untimely and that there is no way around the time-bar. *See Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2005). This is because the statute of limitations is an affirmative defense that need not be anticipated in the complaint to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Accordingly, if there is "a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

Here, Kroll alleges that, in December 30, 2016, CLS's president-elect Zoldan told him that an unexplained tax issue had surfaced, but she reassured him CLS would solve it. Am. Compl. ¶ 40. In addition, Kroll asserts that he was unaware that Cozen had assisted CLS in fraudulently reducing his retirement benefits by

10

amending the Plan.  *Id.* ¶¶ 51, 83.  What is more, Kroll claims that Cozen attorney Jeremy Glenn did not disclose that Cozen had drafted the purported amendment until July 2017, and when he did, he misrepresented that the amendment was enforceable.  *Id.* ¶ 64.  At that point, Kroll says he surmised that Cozen and CLS had been in cahoots all along and were trying to use the unresolved tax issue and the purported amendment to coerce Kroll to accept considerably less than what was obligated under the Plan.  *Id.* ¶¶ 6, 64–71.

These allegations set forth facts that could conceivably support a theory of equitable tolling or estoppel that could defeat Cozen's statute-of-limitations defense.  Taking the allegations as true, as the Court must at this stage, it is possible to conclude that Kroll's claims against Cozen did not accrue until July 2017, thereby making his amended complaint filed in June 2019 timely.  Accordingly, the motion to dismiss the complaint on statute-of-limitations grounds is denied.

### III. Aiding and Abetting Fraud and Breach of Fiduciary Duty

#### A. Dismissal of Aiding and Abetting Claims as a Matter of Law

With respect to Kroll's claims that Cozen aided and abetted CLS's fraud and breach of fiduciary duty to Kroll, Cozen first argues that an attorney cannot be liable for aiding and abetting a client's fraud and breach of fiduciary duty as a matter of law.  To state an aiding and abetting claim under Illinois law, a plaintiff must allege:

> (1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be generally aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.

11

*Wolf v. Liberis*, 505 N.E.2d 1202, 1208 (Ill. App. Ct. 1987).

In support, Cozen cites *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565, 571 (Ill. 1998), a case in which the Illinois Supreme Court affirmed the dismissal of a claim that an employee had allegedly conspired with his employer to wrongfully terminate the plaintiff. The *Buckner* court explained that to state a civil conspiracy claim "a plaintiff must plead a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Id.* The court further noted that, in *Buckner*, a combination of two or more persons necessary for a conspiracy was lacking "because the acts of an agent are considered in law to be the acts of the principal". *Id.*

Cozen also leans on *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 788 N.E.2d 740, 752 (Ill. App. Ct. 2003), where the Illinois appellate court affirmed the dismissal of a claim that a law firm had allegedly conspired with other defendants, noting that the claim was "entirely lacking factually" and legally deficient under *Buckner*. *Id.* at 751–52. But *Buckner* and *Edelman* addressed the pleading requirements of a conspiracy claim under Illinois law, and neither case speaks to an aiding and abetting cause of action.

Cozen's argument is further scotched by *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 768–69 (Ill. App. Ct. 2003), where the Illinois appellate court overturned claims filed against a law firm for aiding and abetting its client's fraud and breach of fiduciary duty:

> [W]e see no reason to impose a per se bar that prevents imposing liability upon attorneys who knowingly and substantially assist their clients in causing another party's injury. As we have recognized, one may not use his license to practice law as a shield to protect himself from the consequences of his participation in an unlawful or illegal conspiracy. The same policy should prevent an attorney from escaping liability for knowingly and substantially assisting a client in the commission of a tort.

*Id.* (internal quotation marks, citations, and alterations omitted); *see Fifth Third Mortg. Co. v. Kaufman*, 934 F.3d 585, 589 (7th Cir. 2019) (stating that, in Illinois, "there is no authority supporting Kaufman's contention that a lawyer cannot aid and abet a client's fraud as a matter of law."). Based on the sound reasoning of *Thornwood* and *Fifth Third Mortgage*, the Court declines to dismiss the aiding and abetting claims on this basis.[3]

## B. Aiding and Abetting Fraud (Count II)

Cozen also challenges Count II in particular, arguing that Kroll has failed to plead that Cozen aided and abetted CLS's fraud with particularity as required under Rule 9(b). "In asserting claims of fraud—including claims for aiding and abetting fraud or a breach of fiduciary duty that involves fraud—a complaint is required to plead the circumstances that allegedly constitute fraud with particularity." *Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, No. 16 CV 06113, 2017 WL 4269005, at *4 (N.D. Ill. Sept. 26, 2017) (internal quotation marks omitted).

---

[3] Cozen also relies on *Alonso v. Weiss*, 98 F. Supp. 3d 956, 972 n.18 (N.D. Ill. 2015). Because the *Alonso* court dismissed the aiding and abetting claim against the defendant-attorney on grounds of waiver, the portion of the opinion on which Cozen relies is dicta. *See id.* at 972. Furthermore, the court in *Alonso* did not have occasion to address either *Thornwood* or *Fifth Third Mortgage*.

13

Kroll has sufficiently pleaded the "who, what, when, where and how" of CLS's purported fraud. He asserts that, in December 2016, CLS officers Weiner and Winner told Kroll that, if he resigned, he would receive his vested deferred compensation in fifteen annual installment payments with annual interest on undistributed amounts. Am. Compl. ¶¶ 35, 43. On Kroll's last day of work, December 30, 2016, CLS's then-president-elect Zoldan reassured Kroll that CLS would solve an unexplained tax issue that had arisen and that he could retire without worrying. *Id.* ¶ 40. In addition, Kroll states that Weiner, Winner, and Zoldan knew at the time that these statements were untrue because they had schemed to drastically reduce Kroll's retirement income and to use the unresolved tax issue to pressure him into accepting half of what he was entitled to under the Plan. *Id.* ¶¶ 1, 44. Moreover, Kroll alleges that he resigned effective December 31, 2016, in reliance on the CLS officers' representations. *Id.* ¶ 37. Finally, he contends that he suffered damages as a result of his reliance on their statements because he would have otherwise enjoyed guaranteed compensation until 2022 and would not have received significantly decreased retirement benefits. *Id.* ¶ 47.

Kroll also adequately describes with adequate particularity how Cozen aided and abetted CLS's fraud. He alleges that Cozen attorneys, including Glenn, were aware of their role in assisting CLS with its fraudulent plan to diminish Kroll's deferred compensation. *Id.* ¶ 6. According to Kroll, Cozen attorneys provided substantial assistance by advising CLS in early December 2016 to coax Kroll into resigning before CLS provided him the details of the tax issue. *Id.* ¶ 6d. Moreover,

Cozen lawyers, including Glenn, drafted the Amendment for the purpose of sharply diminishing Kroll's deferred compensation. *Id.* ¶ 6a. But those attorneys also advised CLS not to disclose the amendment to Kroll until after he had resigned, and, even then, Glenn did not reveal the amendment until July 2017. *Id.* ¶¶ 6d, 56, 64. Kroll further alleges that the amendment was unenforceable because it divested him of rights he was entitled to immediately prior to the effective date of the amendment. *Id.* ¶¶ 64e, 65. *Compare id.*, Ex. B, Plan ¶¶ 5–6, *with id.*, Ex. C, Plan Amendment ¶ 3. Yet, in July 2017, Glenn further assisted in CLS's fraud by representing to Kroll that the amendment was enforceable in order to coerce him to accept half of what he was due under the Plan. *Id.* ¶ 64. It is true that Kroll does not identify any of the attorneys by name, other than Cozen, but this is information that Kroll does not possess (although, of course, Cozen does), thereby relaxing Rule 9(b)'s requirements. Cozen's motion to dismiss Count II is denied.

## C. Aiding and Abetting Breach of Fiduciary Duty (Count III)

As for Count III, Cozen moves to dismiss it, contending that no fiduciary relationship existed between CLS and Kroll. If Cozen is correct, it follows that Cozen could not be liable for aiding and abetting a breach of a fiduciary duty that does not exist.

"The [fiduciary] relationship may arise by operation of law, e.g., attorney and client, guardian and ward . . . ." *Gross v. Univ. of Chi.*, 302 N.E.2d 444, 453 (Ill. App. Ct. 1973). "[A]bsent the existence of the relationship by law, it must be proved by the party asserting it; and it must be shown by proof so clear and convincing, so

strong, unequivocal and unmistaking that it leads to only one conclusion." *Id.* (internal quotation marks omitted). "[I]n the absence of dominance and influence there is no fiduciary relationship regardless of the level of trust between the parties." *Lagen v. Balcor Co.*, 653 N.E.2d 968, 975 (Ill. App. Ct. 1995). An employee-employer relationship is insufficient to establish a fiduciary relationship. *Vargas v. Esquire, Inc.*, 166 F.2d 651, 654 (7th Cir. 1948); *Brusilovsky v. Figgie Int'l*, No. 94 C 1506, 1995 WL 330809, at *5 (N.D. Ill. May 30, 1995).

On this issue, *Hurd v. Illinois Bell Telephone Co.*, 136 F. Supp. 125, 135 (N.D. Ill. 1955), *aff'd*, 234 F.2d 942 (7th Cir. 1956), is instructive. In *Hurd*, a retired employee sued his former employer for breach of fiduciary duty and argued that, by creating a retirement fund, the employer had assumed the role of a fiduciary akin to a trustee. The *Hurd* court disagreed and held that the employee had a contractual, rather than a fiduciary, relationship with his former employer. *Id.*

As in *Hurd*, the fact that CLS created a retirement plan for Kroll's benefit did not create a fiduciary relationship. Kroll adds, however, that his complete confidence and trust in CLS's leaders gave rise to a fiduciary relationship. Am. Compl. ¶ 91. But as the Seventh Circuit stated in *Vargas*, "trust alone . . . is not sufficient to establish the relationship." 166 F.2d at 654 (citation omitted). Notably, Kroll does not contend that he was incapable of handling his own business affairs. Nor does he allege any facts from which it may plausibly inferred that CLS exercised domination and influence over Kroll. Accordingly, the Court grants Cozen's motion to dismiss, and Count III is dismissed without prejudice.

## IV.   Fraudulent Concealment (Count IV)

Next, Cozen argues that Kroll has failed to state a fraudulent concealment claim. To state this claim, "a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). A duty to disclose arises "if plaintiff and defendant are in a fiduciary or confidential relationship" or "where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id.* A "position of superiority may arise by reason of friendship, agency, or experience." *Id.*

Kroll does not contend that he had a fiduciary or confidential relationship with Cozen. Nor does he argue that Cozen held a position of superiority that arose through friendship or agency. Rather, Kroll asserts that Cozen attorney Glenn used his position of superiority as an experienced attorney for CLS when he tried to persuade Kroll to accept less than what he was owed under the Plan. But merely alleging an imbalance of knowledge is insufficient to withstand a motion to dismiss. *See, e.g., Di Rito v. Metro. Life Ins. Co.*, No. 1-17-3202, 2018 WL 6769317, at *6 (Ill. App. Ct. Dec. 24, 2018), *appeal denied*, 119 N.E.3d 1017 (Ill. 2019) ("Di Rito has alleged only an unremarkable asymmetry of information present in many dealings between a consumer and a company from which that consumer is purchasing a product."). And Kroll has not explained why Glenn's superior experience in the law would engender Kroll's total trust and confidence, especially given that Glenn represented the *opposing* party in the deferred compensation dispute.

As a result, Cozen's motion to dismiss the fraudulent concealment claim is granted. Count IV is dismissed without prejudice.

## V.     **Punitive Damages**

Lastly, Cozen contends that Illinois law bars Kroll's request for punitive damages. In support of this argument, Cozen cites 735 Ill. Comp. Stat. 5/2-1115, which provides: "In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal . . . malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed." Section 2-1115 does not apply, however, in the absence of an attorney-client relationship between the plaintiff and defendant. *See Chi. Dist. Council of Carpenters Welfare Fund v. Gleason & Fritzshall*, 693 N.E.2d 412, 417 (Ill. App. Ct. 1998); *Safeway Ins. Co. v. Spinak*, 641 N.E.2d 834, 838 (Ill. App. Ct. 1994).

Neither party contends that Cozen and Kroll shared an attorney-client relationship, and thus section 2-1115 does not bar punitive damages as to Counts II through IV. And because Count I (legal malpractice by assignment) has been dismissed with prejudice, the Court need not discuss whether 735 Ill. Comp. Stat. 5/2-1115 applies to that claim.

## **Conclusion**

For these reasons, Cozen's motion to dismiss the complaint [15] is granted in part and denied in part. Count I (Legal Malpractice by Assignment) is dismissed with prejudice, and Counts III (Aiding and Abetting Breach of Fiduciary Duty) and IV

(Fraudulent Concealment) are dismissed without prejudice.  In all other respects, the motion is denied.

**IT IS SO ORDERED.**                **ENTERED   2/26/20**

_____
**John Z. Lee
United States District Judge**