IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RABBI STANLEY E. KROLL<br><br>    Plaintiff,<br><br>    v.<br><br>COZEN O'CONNOR, a<br>Pennsylvania Professional<br>Corporation<br><br>    Defendant. | Case No. 19-cv-03919<br><br>Honorable John Z. Lee |

**PLAINTIFF'S MOTION TO QUASH OR MODIFY DEFENDANT'S RULE 45
SUBPOENAS TO PLAINTIFF'S LAWYERS**

Plaintiff, Rabbi Stanley E. Kroll, moves under Federal Rules of Civil Procedure 26 and 45 to quash or modify certain subpoenas that Defendant Cozen O'Connor ("Cozen") has served on three lawyers that have represented or advised Rabbi Kroll (Michael Perlstein, Carmen Caruso and Alan Segal) because these subpoenas seek to improperly invade the Rabbi's attorney/client privilege and improperly override the work product doctrine.

Copies of the challenged subpoenas are submitted as Exhibit A. Each subpoena:

- Asserts that Cozen "seeks the production of Documents *regardless of any claim of protection under the attorney-client privilege and/or work product doctrine.*" (Exhibit A, "instruction #4 at pp. 7, 13, 19).

- Is limited to the period ending May 13, 2017. (*Id.*, pp. 7-8, 13-14, 19-20). Not

1

coincidentally, this is two years to the day before Rabbi Kroll's tolling agreement with Cozen expired on May 13, 2019. (*See Declaration of Carmen D. Caruso,* Exhibit B, ¶¶ 18-20).

In an unsuccessful meet and confer effort preceding this motion, Cozen argued that "Rabbi Kroll has waived the protection of the attorney-client privilege and work product doctrine as it relates to the statute of limitations and when he knew or should have known of his alleged injury." (*Id.* ¶23).

Under Rules 45 and 26, Rabbi Kroll moves to quash or modify the subpoenas to his lawyers on the following grounds:

A. The requested discovery is not relevant because Cozen's assertion of the statute of limitations will be defeated by the parties' tolling agreement, as Rabbi Kroll sued Cozen on May 10, 2017 before the tolling agreement expired.

B. Even without the tolling agreement, Cozen's statute of limitations defense will not be plausible.[1] The statute of limitations on Rabbi Kroll's claim against Cozen for aiding and abetting fraud by the CLS did not begin to run until long after May 13, 2017, because as of May 13, 2017, Rabbi Kroll had no knowledge of *any* involvement by Cozen in representing CLS – let alone

---

[1] Cozen has not yet answered the claim for aiding and abetting fraud that survived its Rule 12(b)(6) motion to dismiss. Per the general orders issued in the Northern District due to Covid-19, its answer will be due on June 10, 2020. If Cozen pleads limitations as an affirmative defense, the Plaintiff intends to move to strike for the reasons stated here. *See Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1040 (N.D. Ill. 2014) (recognizing that most courts in the Seventh Circuit have held that the pleading standards of *Twombly/Iqbal* apply to affirmative defenses.").

knowledge that Cozen had aided and abetted a fraud scheme. (*See* Exhibits B and C). Moreover, Cozen engaged in fraudulent concealment to prevent Rabbi Kroll from discovering its involvement; and

C. Even if Cozen overcomes these relevance objections, Rabbi Kroll has not waived his privileges because Cozen cannot show that "application of the privilege would [deny Cozen] have denied the opposing party access to information vital to his defense." *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 272 (N.D. Ill. 1997), quoting *Hearn v. Rhay*, 68 F.R.D. 574, 580 (E.D. Wash. 1975) (emphasis added).

I. **Preliminary statement**

Rabbi Kroll is confident the inquiry Cozen wishes to undertake would yield no evidence favorable to Cozen. (*See* Exhibit B, C and D).[2] However, this motion is not much ado about nothing. Rabbi Kroll is properly defending his privileges even though Cozen's inquiry is a complete waste of time.

II. **Background Facts**

Through the cited subpoenas, Cozen seeks privileged and non-privileged communications from attorneys Michael Perlstein, Carmen Caruso, and Alan Segal. As background:

A. **Attorney Alan Segal** was engaged in September 2017 to advise on tax issues related to the then-pending litigation with CLS and the "Amendment Dated December 30, 2016" as defined in the pleadings. (Exhibit B, ¶22). Segal had no

---

[2] Exhibit D is a Declaration by Rabbi Kroll.

3

involvement in the time period (on or prior to May 13, 2017) covered by the pending subpoena. *Id.*

  **B.**  **Attorney Michael Perlstein** was a trusted advisor Rabbi Kroll turned to for guidance when the Rabbi learned CLS was unable or unwilling to start paying out his deferred compensation at the beginning of 2017. Perlstein attests he had non-privileged communication directly with CLS officers or board members, but had no communication with any lawyers representing CLS (Exhibit C, ¶4); and he further attests that on or before May 13, 2017, he had no knowledge Cozen was representing CLS or had advised CLS in any way concerning Rabbi Kroll; no knowledge CLS had executed the document referred to in the pleadings as the "Amendment Dated December 30, 2016"; and no knowledge CLS had executed *any* instrument purporting to change the terms of Rabbi Kroll's deferred compensation agreement or otherwise reduce the deferred compensation Rabbi Kroll would be entitled to receive. (*Id.,* ¶¶ 6-8).

  **C.**  **Attorney Carmen Caruso** served as Rabbi Kroll's litigation counsel against CLS in the preceding Cook County case, No. 2017 L 008394, and is trial counsel in this case against Cozen. Caruso's first non-privileged action on behalf of Rabbi Kroll came on May 16, 2017 – after the time period covered by the Cozen subpoena – when Caruso wrote directly to CLS president Lee Zolden on behalf of Rabbi Kroll. (*See Declaration of Carmen D. Caruso,* Exhibit B, ¶3). Before sending that letter, Caruso (like Perlstein) had no knowledge Cozen was representing CLS or had advised CLS in any way concerning Rabbi Kroll; no knowledge CLS had executed

4

the document referred to in the pleadings as the "Amendment Dated December 30, 2016"; and no knowledge CLS had executed *any* instrument purporting to change the terms of Rabbi Kroll's deferred compensation agreement or otherwise reduce the deferred compensation Rabbi Kroll would be entitled to receive. (*Id.*, ¶¶ 3(a), (b) and (c)).

D. **Events after Caruso's demand letter on May 16, 2017:** Cozen (by attorney Jeremy Glenn) responded in writing on June 9, 2017, after one or more phone calls post-May 16, 2017. (*Id.*, ¶4). Glenn purported to express his client's "intention to provide for the Rabbi's financial well-being following his many years of service to CLS" – but Glenn communicated a "settlement offer" by CLS for less than 50% of Rabbi Kroll's accrued deferred compensation as of that date. (*Id.*).[3] Rabbi Kroll rejected that proposal. (*Id.* ¶5).

On July 5, 2017, Glenn delivered to Caruso a copy of the alleged "Amendment Dated December 30, 2016" purporting to modify the Rabbi's deferred compensation agreement in ways unfavorable to Rabbi Kroll. (*Id.*, ¶8). Glenn claimed he believed this Amendment had been "discussed with the Rabbi and his previous attorney" but Glenn never supplied facts to substantiate that claimed belief of his. (*Id.* and ¶12).

On July 7, 2017, Caruso responded to Glenn stating in pertinent part:

> I am re-evaluating Rabbi Kroll's position given the Amendment to the Stanley E. Kroll Deferred Compensation Plan dated December 30, 2016 ("Amendment"), **which you shared with me on July 5, 2017**.

---

[3] Glenn was proposing that Rabbi Kroll accept an annuity contract CLS had purchased for Rabbi Kroll some years ago but that did not come close to meeting CLS' contractual deferred compensation obligation to Rabbi Kroll. (*Id.*). On behalf of Rabbi Kroll, Caruso informed Glenn on June 16, 2017 that the offer by CLS on June 9, 2017 was rejected. (*Id.*, ¶5).

5

> **To put it mildly, this Amendment, and your attempt to raise it some months into our discussions, puts the case in a different light.**
>
> I have confirmed the Rabbi and attorney Michael Perlstein never saw this Amendment before July 5, 2017, never agreed to its terms and were never informed of its specific terms. Toward the end of 2016, the Synagogue asked the Rabbi to take early retirement effective the last day of the year. At your client's request, the Rabbi agreed to do so, thus waiving his right to continued employment under his separate employment contract. Your client obtained this concession by the Rabbi without disclosing its intent to amend the deferred compensation plan.to substantially reducing its value. It appears your client committed fraud.
>
> \*\*\*
>
> **Jeremy, I hope you did not draft the Amendment.** With all respect, **whichever lawyer drafted the Amendment and convinced the Synagogue it could get away with a frivolous fraudulent scheme to cheat the Rabbi should notify its malpractice carrier.** …

(Exhibit B, ¶10) (emphasis added).[4]

At no time after receiving Caruso's July 7, 2017 letter did attorney Jeremy Glenn, any other lawyer from Cozen, or any other lawyer representing CLS dispute Caruso's written statement that he had not seen the Amendment Dated December

---

[4] In the same letter on July 7, 2017, Caruso added his opinion that "as a matter of contract law, the Amendment is ineffective to accomplish its fraudulent purpose. Per <u>Plan</u> Section 5, the Synagogue could not amend to deprive the Rabbi of "any rights to which he would have been entitled if the Plan had been terminated immediately prior to the effective date of such Amendment." Such "termination immediately prior" would have been governed by <u>Plan</u> Section 6, which in its "other than interest" clause clearly and unequivocally precludes the Synagogue from its attempt to avoid its obligation to pay future interest at 7.5% over the balance of the installment period." *Id.*

30, 2016 before July 5, 2017, and nor did Glenn contravene Caruso's statement that he confirmed that his client and his client's prior attorney (Michael Perlstein) had no knowledge of this document or its contents. (*Id.*, ¶¶ 11, 12).

Moreover, attorney Glenn did not respond to Caruso's written statement on July 17, 2017 that:

> **I hope you did not draft the Amendment.** With all respect, whichever lawyer drafted the Amendment and convinced the Synagogue it could get away with a frivolous fraudulent scheme to cheat the Rabbi should notify his malpractice carrier.

(*Id.*, ¶ 13).

On August 18, 2017, Caruso filed Rabbi Kroll's complaint against CLS in the Cook County Circuit Court. (*Id.*, ¶14). The complaint included a claim against CLS for fraud but did not name Cozen as a co-defendant as there was no evidence connecting Cozen to the fraudulent Amendment Dated December 30, 2016. (*Id.*)

Cozen appeared in this state court case as counsel for CLS and filed a motion to dismiss, arguing in part that Rabbi Kroll did not allege sufficient facts to support his fraud claim against CLS. (*Id.*, ¶15). *Since Cozen was on notice since July 7, 2017 that "whichever lawyer drafted the Amendment and convinced the Synagogue it could get away with a frivolous fraudulent scheme to cheat the Rabbi should notify his malpractice carrier"* – it is now clear that Cozen had an obvious conflict of interest in attempting to defend CLS for the fraud that, still unknown to Rabbi Kroll, that Cozen had aided and abetted. *By purporting to defend CLS from the Rabbi's fraud allegations, Cozen was in further fraudulent concealment of its role in the fraud.*

7

Rabbi Kroll filed an amended state court complaint against CLS on January 30, 2018. (*Id.*, ¶16). Shortly after the amended complaint was filed, the law firm of Levenfeld Pearlstein substituted for Cozen as counsel for CLS. (*Id.*, ¶17). This enabled Rabbi Kroll to settle with CLS in a private mediation. (*Id.*).

Thereafter, Rabbi Kroll entered a tolling agreement with Cozen, which expired on Monday, May 13, 2017, after Cozen gave notice of termination of the tolling agreement to Rabbi Kroll. (*Id.*, ¶¶ 18-20).

Rabbi Kroll sued Cozen in state court on Friday, May 10, 2019, then amended on May 31, 2019. (*Id.*, ¶19); and Cozen removed the case to federal court on June 11, 2019. (Dkt. # 1). The Rabbi's complaint on May 10, 2017, included the claim that Cozen aided and abetted its client's fraud., as did the Amended Complaint on May 31, 2019. (*Id.*).

### III. ARGUMENT

The importance of the attorney/client privilege must be acknowledged. As the Supreme Court held in *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed. 2d 584 (1981):

> The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." And in *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), we recognized the purpose of the privilege to be "to encourage clients to make full disclosure to their attorneys." This rationale for the privilege has long been recognized by the Court, see *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888) (privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the

8

law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure").

Accordingly, it is not easy for a litigant to establish an implied waiver of the attorney/client privilege, as Cozen seeks to argue here. Rabbi Kroll's denial that he knew of facts sufficient to sue Cozen more than two years before he sued Cozen on May 10, 2019 does not give rise to an implied waiver. *See Claffey v. River Oaks Hyundai*, 486 F. Supp. 2d 776, 778 (N.D. Ill. 2007) ("as a general rule, an implied waiver of this type happens only if a party uses privileged communications to defend itself or attack its opponent … [and] COAF's mere denial of willfulness does not effect an implied waiver of its attorney-client privilege") (citations omitted).

For the reasons set forth in Argument (C), Cozen's implied waiver argument fails under settled case law. But the Court need not reach that issue. As stated in Arguments (A) and (B), Cozen's claim that it must be allowed to invade Rabbi Kroll's privileges to develop its statute of limitations defense fails as implausible. *See Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1040 (N.D. Ill. 2014) (holding affirmative defenses to the same pleadings standards as a complaint).

### A. The requested discovery is not relevant due to the parties' tolling agreement.

Cozen cannot dispute that Rabbi Kroll filed his complaint on May 10, 2017, before the parties tolling agreement expired on May 13, 2017. (Exhibit B, ¶¶ 18-20). The defendant's desire to plead a statute of limitations defense is doomed. In the exercise of its broad discretion to supervise discovery under the Federal Rules of Civil Procedure, the Court should not permit Cozen to invade Rabbi Kroll's privileges to

9

develop a purported affirmative defense that will not be "plausible" in view of the tolling agreement.

### B. **Cozen misstates the "discovery rule" in this aiding and abetting case**

There is a second reason why Cozen's hope of developing a statute of limitations defense will fail: Cozen cannot overcome evidence of facts that refute its apparent argument that Rabbi Kroll's knowledge that the Synagogue had failed to timely pay his deferred compensation triggered the running of the statute of limitations on his claim against Cozen for aiding and abetting the Synagogue's fraud. (Exhibit B, ¶23).

It is well-established in Illinois law that for purposes of applying a statute of limitations, "plaintiffs should not be 'held to a standard of knowing the inherently unknowable.'" *See Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 29, 44 N.E.3d 501, quoting *Nolan v. Johns-Manville,* 85 Ill.2d at 171, 52 Ill.Dec. 1, 421 N.E.2d 864.

In its "meet and confer" effort to justify these subpoenas, Cozen asserted it seeks to establish when Rabbi Kroll learned of his injury (Exhibit B, ¶23) -- but that is not a proper formulation of the issue. The question is not whether Rabbi Kroll knew before May 10, 2017 that the Synagogue was in breach of its duty to timely pay deferred compensation to Rabbi Kroll in amounts required by the Rabbi's agreement with the Synagogue. Cozen is begging the question of whether Rabbi Kroll, on or before May 10, 2017, had sufficient knowledge of facts putting him on inquiry that Cozen had possibly aided and abetted a fraud by its client against the Rabbi.

10

This case compares favorably for Rabbi Kroll to *Janousek*, where an Illinois appellate court held that a plaintiff's complaint against a law firm for aiding and abetting its client's breach of fiduciary duties was time-barred where:

> Janousek knew that Howard Richard, whom he identified in his complaint as Burton Slotky's nephew and Michael Slotky's cousin, had represented BIG when it filed its article of incorporation in 2007, as Richard signed the document as "organizer." He also knew that Richard continued to act as the Slotkys' attorney after Janousek's employment ended and he filed his lawsuit against the Slotkys; while Janousek filed a motion to disqualify Katten from representing BIG, he did not object to Katten's continued representation of the Slotkys and BIG III. Further, Janousek knew of the formation of BIG III and could have requested a copy of the articles of incorporation from the Illinois Secretary of State, which lists Richard as the "organizer" of BIG III. Although Janousek contends that he was unable to determine defendants' role, that information was of public record.

*Id.*

In contrast to *Janousek*, Rabbi Kroll could not check public records to determine Cozen's role as the lawyers advising CLS in December 2016, when CLS fraudulently induced Rabbi Kroll to resign. Rabbi Kroll did not know of *any* representation of CLS by Cozen until *after* Cozen responded to Rabbi Kroll's May 16, 2017 demand letter; and Rabbi Kroll had no grounds to *suspect* fraud by Cozen until *July 2017*, when Caruso stated to Cozen partner Jeremy Glenn, to repeat:

> **I hope you did not draft the Amendment.** With all respect, whichever lawyer drafted the Amendment and convinced the Synagogue it could get away with a frivolous fraudulent scheme to cheat the Rabbi should notify his malpractice carrier.

(Exhibit B, ¶10).

11

Even then, as of July 7, 2017, Rabbi Kroll could only *suspect* Cozen lawyers were the culprits and he had no evidence linking Cozen to what was beginning to look like serious fraud by the Synagogue, and Cozen continued to deflect the inquiry into 2018 as it defended CLS against the Rabbi'[s fraud claim.

Illinois law "still requires that plaintiff is or should be aware of some possible fault *on the part of the defendant. Mitsias v. I-Flow Corp.,* 2011 IL App (1st) 101126, ¶ 24, 959 N.E.2d 94, 101–02 (citations omitted). Mere knowledge that CLS was in derogation of its duties to pay his deferred compensation is insufficient as a matter of law to conclude that Rabbi Kroll was on reasonable notice, before July 2017, of possible fraud claims against the lawyers that drafted the Amendment Dated December 30, 2016, and as a matter of law, "courts have held that reasonable knowledge of wrongful cause requires more than a mere suspicion that wrongdoing might have occurred, if that suspicion is not yet supported by facts known to plaintiff." *Id.*

Simply put, the Court should not allow Cozen to invade Rabbi Kroll's privileges absent a showing by Cozen, in the first instance, that it would be plausible to believe Rabbi Kroll had knowledge of facts putting him on notice of Cozen's role in a fraud scheme more than two years before Rabbi Kroll sued Cozen for aiding and abetting. Cozen has not attempted to make such a showing, and it cannot do so.

### C. Rabbi Kroll has not made an "implied waiver" of his privileges

In the parties' meet and confer effort preceding this motion, Cozen cited the "implied waiver" doctrine articulated in cases such as *Pyramid Controls, Inc. v.*

*Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 272 (N.D. Ill. 1997) ("Implied waiver of the attorney-client privilege can occur where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications.")

However, the mere filing of a fraud complaint is not an automatic implied waiver of privilege. For Cozen to succeed in its "implied waiver" argument, Cozen must show that *"application of the privilege would have denied the opposing party access to information vital to his defense."* *Id.* at 272, quoting *Hearn v. Rhay*, 68 F.R.D. 574, 580 (E.D. Wash. 1975) (emphasis added). Cozen has made no such showing, and nor could it. The information vital to Cozen's defense could *only* have been imparted to Cozen through *non-privileged communications* from either Cozen or its former client, CLS, to Rabbi Kroll. Rabbi Kroll does not object to discovery of non-privileged communications; and nor can Cozen show lack of access to its own communications or those by CLS, its former client. There has been no showing that Cozen cannot defend itself without invading Rabbi Kroll's privileges.

Moreover, "[t]he advice of counsel is placed in issue where the client asserts a claim or defense and attempts to prove that claim or defense by disclosing or describing an attorney-client communication." *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill 2001), citing *Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851(3d Cir.1994). Rabbi Kroll is *not* seeking to prove his claim based on privileged communications. There has been no implied waiver.

D. **Request for Relief**

13

Under Federal Rule of Civil Procedure 45(d)(3)(A)(iii), the Court should quash or modify the subpoenas to attorneys Perlstein, Caruso and Segal for improperly seeking the discovery of privileged information or work product.

WHEREFORE, Plaintiff Rabbi Stanley Kroll respectfully requests this Court to grant Plaintiff's motion quashing or modifying each of Defendant's subpoenas, and for such other relief as this Court deems equitable and just.

Dated: May 18, 2020

        Respectfully submitted,

        RABBI STANLEY E. KROLL, PLAINTIFF


      By: */s/* Carmen D. Caruso
        *One of his Attorneys*


Carmen D. Caruso (# 6189462) – cdc@cdcaruso.com
James Stevens (# 6191415) – jcs@cdcaruso.com
William B. Whitner (#6331564) – wbw@cdcaruso.com
CARMEN D. CARUSO LAW FIRM
77 West Washington St., Ste. 1900
Chicago, IL 60602
(T): 312-626-1160
(F): 312-276-8646

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on May 18, 2020, a true and correct copy of the foregoing was filed in the Court's electronic filing system. Notice of this filing and a copy of the foregoing was emailed to all counsel of record copied below via the Court's ECF system.

Jack J. Carriglio – jcarriglio@cozen.com
Corey T. Hickman – chickman@cozen.com
COZEN O'CONNOR
123 N. Wacker Drive, Ste. 1800
Chicago, Illinois 60606
(T): 312-474-7900
(F): 312-474-7898

*Attorneys for Defendant*

                                                */s/ William B. Whitner*