UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RABBI STANLEY KROLL, ) | |
| ) | |
| Plaintiff, ) | Case No. 19 C 3919 |
| ) | |
| v. ) | District Judge John Z. Lee |
| ) | Magistrate Judge Gabriel A. Fuentes |
| COZEN O'CONNOR, a Pennsylvania ) | |
| Professional Services Corporation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion (D.E. 37) by Plaintiff Rabbi Stanley Kroll ("Plaintiff") to quash three subpoenas Defendant Cozen O'Connor ("Defendant" or "Cozen") has served on two of Plaintiff's former attorneys and on the law firm currently representing Plaintiff in this action. The Amended Complaint in this matter, which is before the magistrate judge on referral for discovery (D.E. 41), included a lead count alleging legal malpractice by assignment (Count I), along with claims for aiding and abetting a fraud (Count II), aiding and abetting a breach of fiduciary duty (Count III), and fraudulent concealment (Count IV). Defendant's subpoenas upon the lawyers and law firm "seek the production of Documents regardless of any claim of protection under the attorney-client privilege and/or work product doctrine." (Plaintiff's Motion to Quash or Modify Defendant's Rule 45 Subpoenas to Plaintiff's Lawyers ("Mot.") (D.E. 37), Exh. A (D.E. 37-1) at 8.) Defendant Cozen argues that the attorney-client privilege and work-product doctrine do not protect the requested documents from discovery because the documents are relevant to when Plaintiff's cause of action accrued, and that Plaintiff has placed the question of discovery of his injury in issue by asserting the discovery rule as a shield to Defendant's statute-of-limitations

defense. (Defendant's Response to Plaintiff's Motion to Quash or Modify Defendant's Rule 45 Subpoenas to Plaintiff's Lawyers ("Resp.") (D.E. 48)).

## BACKGROUND

Plaintiff is the retired rabbi of third-party Chicago Loop Synagogue ("the Synagogue"), having stepped down on December 30, 2016. (Amended Complaint, D.E. 1-3 ¶ 1.) His lawsuit makes the following allegations about the dispute that arose over his retirement benefits and gave rise to this lawsuit (*see generally id.*): Plaintiff's compensation included a deferred compensation plan ("the Plan") established by the Synagogue to fund Plaintiff's retirement. In general, the Plan called for the Synagogue to set aside $15,000 a year in deferred compensation, with interest to accrue at no less than 7.5% a year on all undistributed amounts until final distribution to Plaintiff. In 2010, Plaintiff was provided a guaranteed schedule of benefits showing that, by December 31, 2016, the deferred compensation account would reach $866,445.95, and that, by January 1, 2020, the account would reach $1,111,177.20. In 2016, the Synagogue sought to cut expenses, and to that end, its then-president-elect, Lee Zoldan, asked Plaintiff to retire at the end of that year, and Plaintiff agreed, opting to receive his retirement payments in 15 annual installments per the Plan. On Plaintiff's last day at the Synagogue, December 31, 2016, Zoldan told Plaintiff that an unexplained tax issue had arisen with regard to the Plan, but she assured him that the issue would be solved.

Plaintiff alleges that shortly before he retired at the end of December 2016, the Synagogue – without his knowledge – retained Cozen, a law firm, to advise the Synagogue about how it might reduce its payments to Plaintiff. (*Id.* ¶¶ 1, 51.) He says he later learned that because the Plan did not comply with applicable tax regulations since 2005, his entire retirement account would be considered taxable income and would be subject to a 20% penalty if any of it were distributed to

Case: 1:19-cv-03919 Document #: 54 Filed: 06/10/20 Page 3 of 17 PageID #:813

him. (*Id.* ¶ 41.) He further alleges that the Synagogue had not set aside enough money to fund his retirement payments under the Plan. (*Id.* ¶¶ 38-39.) Plaintiff also alleges that in July 2017, Jeremy Glenn, a Cozen attorney, delivered to Plaintiff's attorney Carmen Caruso a copy of a Plan amendment, dated December 30, 2016, that purported to eliminate interest on all undistributed amounts, reducing the amount of deferred compensation owed to Plaintiff. Plaintiff alleges that this communication was the first time Plaintiff learned of Cozen's involvement in the Synagogue's alleged scheme. (*Id.* ¶ 55.) Plaintiff and the Synagogue then proceeded to discuss potential settlement terms (which Plaintiff alleges were coercive and part of a fraudulent scheme to cause him to accept reduced compensation), but Plaintiff wound up suing the Synagogue and obtaining a settlement. (*Id.* ¶ 11, 61-63; Mot. at 5-8; Resp. at 4.)

Plaintiff brought the instant lawsuit against Cozen in complaints filed on May 10 and 31, 2019. (Complaint and Amended Complaint, D.E. 1-2, 1-3.) Because the lawsuit arises out of professional services provided by Defendant as a law firm, the suit is subject to Illinois's two-year limitations period for such actions. *See* 735 ILCS 5/13-214.3(b). Further, Plaintiff and Cozen entered into a tolling agreement that Plaintiff says terminated effective May 10, 2019 (D.E. 1-3 ¶ 10), and that Cozen says expired on May 14, 2019, the day after the agreement terminated on May 13, 2019. (Resp. at 9). In any event, the parties dispute whether the Amended Complaint relates back to the Complaint, and to prove its affirmative defense based on the two-year statute of limitations, Cozen wishes to discover facts about whether Plaintiff leaned of his alleged injuries before mid-May 2017. (*Id.* at 2.) Plaintiff has asserted that he timely filed his Complaint as of May 10, 2019 (under the assumption that the Amended Complaint will be found to relate back), but also has stated that he was not told of the allegedly fraudulent December 30, 2016 Plan amendment until July 5, 2017, thereby suggesting that if he were found not to have filed timely in

3

May 2019, he would be entitled an equitable tolling of the limitations period by operation of the discovery rule. (Mot. at 6-7; Plaintiff's Opposition to Defendant's Motion to Dismiss (D.E. 24) at 2.)

Judge Lee addressed Cozen's limitations defenses in denying Cozen's Rule 12(b)(6) motion on that ground. Judge Lee dismissed Count I with prejudice for other reasons, but as to limitations, he declined to dismiss Counts II, III and IV. (2/26/20 Order (D.E. 31) at 10-11.) The district judge ruled that the Amended Complaint made out a plausible claim that Plaintiff did not discover his claims against Cozen until at least July 2017:

> Here, Kroll alleges that, in December 30, 2016, CLS's president-elect Zoldan told him that an unexplained tax issue had surfaced, but she reassured him CLS would solve it. Am. Compl. ¶ 40. In addition, Kroll asserts that he was unaware that Cozen had assisted CLS in fraudulently reducing his retirement benefits by amending the Plan. *Id.* ¶¶ 51, 83. What is more, Kroll claims that Cozen attorney, Jeremy Glenn, did not disclose that Cozen had drafted the purported amendment until July 2017, and when he did, he misrepresented that the amendment was enforceable. *Id.* ¶ 64. At that point, Kroll says he surmised that Cozen and CLS had been in cahoots all along and were trying to use the unresolved tax issue and the purported amendment to coerce Kroll to accept considerably less than what was obligated under the Plan. *Id.* ¶¶ 6, 64–71.
>
> These allegations set forth facts that could conceivably support a theory of equitable tolling or estoppel that could defeat Cozen's statute-of-limitations defense. Taking the allegations as true, as the Court must at this stage, it is possible to conclude that Kroll's claims against Cozen did not accrue until July 2017, thereby making his amended complaint filed in June 2019 timely. Accordingly, the motion to dismiss the complaint on statute-of-limitations grounds is denied.

(D.E. 31 at 10-11.)

Less than a month after Judge Lee's memorandum opinion denying Cozen's bid to dismiss this matter on limitations grounds, Cozen issued subpoenas to lawyers Alan Segal, Michael Perlstein, and the Caruso firm (whose principal, Carmen Caruso, represented Plaintiff in July 2017 and is counsel to Plaintiff in this lawsuit). (Mot., Exh. A, D.E. 37-1.) The subpoenas, which state

4

explicitly that they seek documents without regard to privilege or work-product claims, contain the following set of document requests as to each of the three attorneys:

> 1. All Documents including or relating to any communications between you and Rabbi Stanley E. Kroll on or before May 13, 2017.
>
> 2. All Documents including or relating to any communications between you and the Chicago Loop Synagogue.
>
> 3. All Documents created, dated, sent, or received by you on or before May 13, 2017, relating to Rabbi Stanley E. Kroll.
>
> 4. All Documents created, dated, sent, or received by you on or before May 13, 2017, relating to the Chicago Loop Synagogue.
>
> 5. All Documents created, dated, sent, or received by you on or before May 13, 2017, relating to Rabbi Stanley E. Kroll's 1995 Deferred Compensation Plan with the Synagogue.
>
> 6. All Documents created, dated, sent, or received by you on or before May 13, 2017, relating to Rabbi Stanley E. Kroll's Employment Agreement with the Synagogue.
>
> 7. All Documents created, dated, sent, or received by you on or before May 13, 2017, relating to any amendments to Rabbi Stanley E. Kroll's 1995 Deferred Compensation Plan with the Synagogue.

(*Id.*)

According to Plaintiff, he engaged Mr. Segal in September 2017 "to advise on tax issues" related to the now-settled litigation between Plaintiff and the Synagogue, and to advise him concerning the December 2016 amendment to the Plan. (Mot. at 3-4.) Plaintiff asserts that he turned to Mr. Perlstein, "a trusted advisor," for "guidance" when he learned that the Synagogue "was unable or unwilling to start paying out his deferred compensation at the beginning of 2017." (*Id.* at 4.) Mr. Caruso was Plaintiff's litigation counsel in the now-settled lawsuit against the Synagogue and is Plaintiff's trial counsel in the instant case. Plaintiff asserts that Mr. Caruso's "first non-privileged action" on Plaintiff's behalf was a demand letter he sent to the Synagogue on

5

May 16, 2017.  (*Id.*)  Mr. Caruso states that at the time of his May 16, 2017 letter to the Synagogue, he did not know of Cozen's representation of the Synagogue or of the 2016 Plan amendment.  (*Id.*, Exh. B, D.E. 37-2 at 3.)

Plaintiff's prayer for relief (Mot. at 14) asks the Court to "quash[]" or "modify[]" each of the subpoenas.

## DISCUSSION

Cozen's ability to obtain Plaintiff's confidential communications with the lawyers who advised or represented him after his departure from the Synagogue, and after the 2016 Plan amendment that he complains is part of a fraud that Cozen aided and abetted as the Synagogue's lawyers, turns on whether Plaintiff has impliedly waived attorney-client and work-product protections under a doctrine known as "at issue" waiver.  In essence, Cozen argues that by relying on the discovery rule to toll equitably the running of the statute of limitations, Plaintiff has placed "at issue" the question of when his claims accrued, and thus when he learned of his injuries. Cozen asserts that by doing so, Plaintiff has waived the attorney-client privilege and the work-product doctrine as to communications with lawyers Segal, Perlstein and Caruso, at least to the extent those communications bear upon when Plaintiff learned of his injury.  On Plaintiff's motion to quash the subpoenas, this Court is not reaching the potentially case-dispositive questions of whether Plaintiff's Amended Complaint relates back to the Complaint so that Plaintiff timely filed, or whether the discovery rule applies so as to toll the limitations period to July 2019.  Therefore, the Court will move directly to the question of whether Plaintiff's reliance on the discovery rule waives his attorney-client and work-product privileges, under the "at issue" waiver doctrine, as to his communications with the three attorneys who represented or advised him after his departure from the Synagogue.

**I.      Illinois Privilege Law Applies To Cozen's Effort To Obtain Privileged Communications.**

With this matter before the Court on removal jurisdiction based on diversity of citizenship, so that Illinois state law supplies the rule of decision for the parties' claims and defenses, Illinois law governs questions surrounding privilege. Fed. R. Civ. P. 501; *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 272 (N.D. Ill. 2004). The Court must then determine how Illinois law approaches the question of "at issue" waiver. To do so, the Court determines what the Illinois Supreme Court would do if it were presented with the issue. *Id.* at 276, citing *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997). Where the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently. *Allen*, 128 F.3d at 466.

**II.     Illinois Law Recognizes Only a Limited "At Issue" Waiver Doctrine.**

As a preliminary matter, it bears noting that the Illinois Supreme Court has yet to address squarely the question of whether implied or "at issue" waiver occurs with respect to a plaintiff's communications with attorneys who were retained or consulted after the allegedly tortious conduct, on the subject of when the claim accrued. At least one appellate court in Illinois has addressed this question, *Lama v. Preskill*, 353 Ill. App. 3d 300, 307 (2d Dist. 2004), and another addressed it in dicta. *Daily v. Greensfelder, Hemker & Gale, P.C.*, 2018 Ill. App. (5th) 150384 ¶ 32 n.8. Both the *Lama* holding and the *Daily* dicta stated that privilege as to communications about claim accrual is waived by a party who places the discovery rule in issue. As explained below, the Illinois Supreme Court's decision in *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.,* 189 Ill. 2d 579 (2000), is a persuasive indication that the highest court of Illinois would not so hold, but would hold instead that Plaintiff here did not waive attorney-client or work-product privileges with respect to lawyers Segal, Perlstein, and Caruso, who represented him subsequent

7

to 2016 and whose communications with Plaintiff about claim accrual would not be vital to Cozen's defense.

  A. **The Illinois Supreme Court in *Fischel & Kahn* Looked With Relative Disfavor on "At Issue" Waiver of Communications with Subsequently Engaged Lawyers.**

Strangely, neither of the parties cites or discusses *Fischel & Kahn* at all in arguing for and against, respectively, the extension of the "at issue" waiver doctrine to the privileged communications sought in this case. In *Fischel & Kahn*, the plaintiff law firm sued its former client art gallery for unpaid fees, prompting – as is frequently a law firm's reward for suing for fees – a legal malpractice counterclaim. The counterclaim accused the law firm of causing the gallery to incur damages by negligently advising it about how to limit its liability to consignment artists whose work was subsequently destroyed in a fire at the gallery. *Id.* at 581. The fire generated a separate piece of litigation in which a second law firm, Pope & John, represented the gallery and negotiated a settlement. In the litigation of the malpractice counterclaim, the first law firm, Fischel & Kahn, sought compelled discovery of Pope & John's privileged communications with the gallery under the theory that Fischel & Kahn needed the gallery's communications with Pope & John about the fire litigation and its settlement in order to determine how much if any of the gallery's losses could be attributed to negligence by Fischel & Kahn. *Id.* at 585.

Reversing the Illinois Appellate Court, the Illinois Supreme Court in *Fischel & Kahn* acknowledged that the "at issue" waiver doctrine at least exists in Illinois, stating that the gallery's counterclaim for legal malpractice "has placed Fischel & Kahn's advice at issue and has waived the attorney-client privilege with respect to communications between it and Fischel & Kahn." *Id.* The court declined, however, to hold that the "at issue" waiver doctrine extended to the privileged communications between the gallery and its *subsequent* counsel, Pope & John, in the fire litigation.

*Id.* The court relied on two out-of-jurisdiction cases, the second of which has greater significance for our present purposes. *Id.* at 586-87. In the first, *Jakobleff v. Cerrato, Sweeney & Cohn*, 468 N.Y.S. 2d 895 (1983), another legal malpractice case, the defendant law firm sought privileged communications between the plaintiff and the attorney representing her in the malpractice case, under a theory that the communications were relevant to plaintiff's damages; New York's Appellate Division held that the privilege was not waived.

The second case relied on by the Illinois Supreme Court's *Fischel & Kahn* decision was *Miller v. Superior Court,* 111 Cal. App. 3d 390 (1980), a case virtually on all fours with the instant case as far as the "at issue" waiver is concerned. In *Miller*, the defendant in a legal malpractice claim raised the statute of limitations as a defense and sought privileged communications between the plaintiff and "other attorneys *after* defendant's alleged malpractice." *Fischel & Kahn*, 189 Ill. 2d at 587, citing *Miller*, 111 Cal. App. 3d at 395. The Illinois Supreme Court noted that the California court in *Miller* held that the privileged communications between the plaintiff and these attorneys who represented her after the alleged malpractice were protected by the attorney-client privilege. *Id.* Quoting *Miller*, the Illinois Supreme Court continued:

> Miller's state of knowledge is clearly in issue and may be proved by any competent evidence available to real parties [*i.e.,* Miller's former attorney]. However, the mere fact that her state of mind is in issue does not cause a waiver of her privilege concerning confidential communications between her and attorneys she consulted after the alleged malpractice. There is no statutory waiver in such circumstances, and no basis for creating a nonstatutory waiver. To do so would create an intolerable burden upon the attorney-client privilege, making it very difficult for the parties to the relationship to openly discuss matters which might eventually lead to litigation.

*Id.* at 597, quoting *Miller*, 111 Cal. App. 3d at 394-95.

The purpose of the attorney-client privilege is, after all, "'to encourage and promote full and frank consultation between client and legal advisor by removing the fear of compelled disclosure of information.'" *Id.* at 584-85, quoting *Waste Mgt., Inc. v. Int'l Surplus Lines Ins. Co.,*

9

144 Ill. 2d 178, 190 (1991). The Illinois Supreme Court in *Fischel & Khan* reasoned that the disputed nature of the gallery's damages (clearly put at issue by the gallery) did not mean that the gallery had waived its attorney-client privilege as to its communications with Pope & John simply because those communications "might touch on that question." *Id.* at 587.

Cozen's three subpoenas on lawyers Segal, Perlstein and Caruso are in a similar posture. The privileged communications those attorneys had with Plaintiff in 2017 might touch on what and when the plaintiff knew about his injuries from a 2016 alleged fraud. The Court does not see the Illinois Supreme Court reaching the opposite conclusion from its holding in *Fischel & Kahn* – namely that Plaintiff *did* waive his privileges by invoking the discovery rule – simply because the disputed issue in this matter involves limitations and the discovery rule, whereas the disputed issue in *Fischel & Kahn* was the plaintiff's damages. That is particularly so when *Fischel & Kahn* relied so heavily on *Miller*, in which the "at issue" waiver argument was the same one that Cozen makes here – and was rejected. *Fischel & Kahn* signals a protective approach to the attorney-client and work-product privileges when one party claims the other has waived those privileges by placing "at issue" a factual matter about which the other party communicated with lawyers who only became involved in the case after the allegedly tortious conduct was over. As the court emphasized: "If raising the issue of damages in a legal malpractice action automatically resulted in the waiver of the attorney-client privilege with respect to subsequently retained counsel, then the privilege would be unjustifiably curtailed." *Id.*

Moreover, the Illinois Supreme Court in *Fischel & Kahn* also concluded that the privileged communications sought by the law firm were not "vital" to its defense of the action, in that "[e[vidence regarding the client's damages resulting from the law firm's alleged negligence would, in the present context, be available to either party." *Id.* at 588. Nor can Plaintiff's communications

10

with lawyers Segal, Perlstein, and Caruso be considered vital to Cozen's defenses here. This matter is early in discovery. The Court set a schedule under which Plaintiff's written discovery responses are not due until July 9, 2020, and fact discovery – which is likely to include Plaintiff's deposition – does not close until November 16, 2020. (D.E. 47.) The Court has no basis to conclude, at this early stage of the case, that Plaintiff's privileged communications with the three lawyers he consulted after leaving the Synagogue at the end of 2016 are the only source of evidence about when Plaintiff learned, and what he learned, about the nature of his alleged injuries.

Consequently, although *Fischel & Kahn* did not decide whether a party waives its privileged communications with lawyers about when a claim accrues, once that party has invoked the discovery rule, *Fischel & Kahn* strongly indicates that the Illinois Supreme Court would extend its holding in that case to the instant context if it were asked to do so. The Illinois Supreme Court in *Fischel & Kahn* treaded cautiously where the privileged communications were between the plaintiff and lawyers other than Fischel & Kahn, and lawyers whose involvement in the case occurred after the allegedly tortious conduct by the lawyers who were sued.[1] The Illinois high court's refusal to hold the privilege to have been waived in the circumstances of *Fischel & Kahn* is a strong indication that the same court would do so in a case like the instant case, which is highly analogous to *Miller*.

### B. *Daily*, As Appellate Court Authority for "At Issue" Waiver of the Privileged Communications Sought in this Case, Is Distinguishable and Unpersuasive.

Cozen relies on *Daily*, a 2018 Illinois Appellate Court decision in which the court found waiver of the privilege based on the "at issue" doctrine, but not in the context of privileged

---

[1] The *Fischel & Kahn* decision reached the same conclusion as to work-product protection as it did as to attorney-client privilege, and for the same reasons. *Fischel & Kahn*, 189 Ill. 2d at 592. This Court sees no reason why an Illinois court would treat the work-product protection any differently than attorney-client privilege in this context.

11

communications about claim accrual. In *Daily*, the plaintiff doctor and physicians' practice brought a claim for breach of fiduciary duty against a law firm that had represented them jointly with a health care organization for purposes of negotiation of an agreement for plaintiffs to serve as the organization's exclusive provider of heart-surgery services in the St. Louis area. 2018 IL App (5th) 150384, ¶ 5. Negotiations had broken down and had resulted in the doctors filing a lawsuit in Missouri over the enforceability of their noncompete agreements, whereupon the law firm that had jointly represented them sought to intervene in the Missouri litigation on behalf of the health care organization; the Missouri litigation resulted in a settlement in which the defendant law firm also was involved through its drafting of a clause including the firm in a release of claims. *Id.* ¶¶ 7, 8. Then, in the Illinois breach of fiduciary duty case by plaintiffs against the law firm, the law firm sought discovery of privileged communications between the plaintiffs and the lawyers who had represented the plaintiffs in the Missouri litigation ("the Missouri litigation lawyers"). *Id.* ¶ 11. The law firm argued that it was entitled to learn whether the Missouri litigation lawyers caused or contributed to plaintiffs' claimed damages; the law firm also noted that plaintiffs' breach of fiduciary claims referenced the law firm's involvement in the Missouri litigation and settlement, which occurred at the same time plaintiffs were represented by the Missouri litigation lawyers. *Id.*

The Illinois Appellate Court in *Daily* held that plaintiffs had waived the privilege as to communications with the Missouri litigation lawyers because "there is an issue of whether [the Missouri litigation lawyers] contributed to cause the Missouri litigation and its outcome and the relative contribution of each to the plaintiffs' damages." *Id.* ¶ 31. The *Daily* court allowed discovery of privileged communications concerning the role the Missouri litigation lawyers played in the events leading up to the Missouri litigation but denied discovery of communications

12

concerning the amount and reasonableness of the Missouri litigation's settlement, citing *Fischel & Kahn*. *Id.* ¶ 32.

The deep involvement of the defendant law firm in the Missouri litigation, and the strong connection between the Missouri litigation and the *Daily* plaintiffs' damages claims for breach of fiduciary duty by the defendant law firm, distinguish *Daily* powerfully from the instant case, in which lawyers Segal, Perlstein, and Caruso are said to have become involved only after Plaintiff retired from the Synagogue and after Cozen is alleged to have drafted the Plan amendment that Plaintiff describes as an instrument of the underlying fraud. Accordingly, the Court does not read *Daily* as an appellate opinion that supports Cozen's position that "at issue" waiver applies to Plaintiff's communications about claim accrual with the subsequently retained lawyers Segal, Perlstein and Caruso.

But there is the small matter of a *Daily* footnote, upon which Cozen places considerable reliance. (Resp. at 7.) In the footnote, the *Daily* court added:

> We note that the record reveals a potential issue regarding whether the plaintiffs brought their breach of fiduciary duty claim against Greensfelder within the applicable statute of limitations. If the plaintiffs were to confront this issue with a claim that the discovery rule applies to toll the statute of limitations, then documents listed on the plaintiffs' privilege log evidencing communications between the plaintiffs and [the Missouri litigation lawyers] that are relevant to the time frame in which the plaintiffs became aware of a cause of action against Greensfelder for breach of fiduciary duty would also fall within the "at issue" exception to the attorney-client privilege. See *Lama v. Preskill*, 353 Ill. App. 3d 300, 306-07 (2004) (citing *Pyramid Controls, Inc. v. Siemens Industrial Automations, Inc.*, 176 F.R.D. 269, 271 (N.D. Ill. 1997).

*Id.* ¶ 32 n.8 (citations partially omitted). Insofar as the *Daily* court was not presented with whether an invocation of the discovery rule triggered "at issue" waiver, the footnote is obviously dicta. As dicta, it does not outweigh the conclusions the Court is reaching based on *Fischel & Kahn.* And for good reason: The *Daily* court's discussion of "at issue" waiver in the discovery context, taking

13

place as it did in a footnote when the issue was not presented in *Daily*, lacks an in-depth analysis of whether the Illinois Supreme Court would extend its holding in *Fischel & Kahn* to the discovery rule context, and specifically how refusing to extend *Fischel & Kahn* in this way could possibly square with the *Fischel & Kahn* court's reliance on *Miller*.[2]

### C. *Lama* Is Similarly Unpersuasive Authority for Applying the "At Issue" Waiver Doctrine to the Privileged Communications Sought in this Case.

Cozen's reliance on the Illinois Appellate Court's decision in *Lama* (Resp. at 6) fares no better. In *Lama,* the court cited the Illinois Supreme Court's decision in *Fischel & Kahn* but only for the proposition that "[t]he attorney-client privilege protects communication made in confidence by a client to a professional legal advisor where the client seeks legal advice from that advisor," and that the privilege "can be waived by the client." *Id.* at 305. Although *Lama* did permit discovery of the privileged communications under a theory of "at issue" waiver because plaintiff invoked the discovery rule to defeat the defendant's limitations defense, *id.* at 306-08, the court's failure to discuss *Fischel & Kahn*'s analysis of the limits of the "at issue" waiver doctrine renders this decision of little use in predicting how the Illinois Supreme Court would resolve the question now.

Instead of discussing *Fischel & Kahn*, the court in *Lama* relied heavily on an earlier federal decision, *Pyramid Controls. Inc. v. Siemens Indus. Automations, Inc.*, another case in which a party sought privileged communications between its adversary and lawyers the adversary hired after the tortious conduct but during a time frame in which the adversary's awareness of its injuries was at

---

[2] The majority decision in *Daily* also drew a reasoned dissent from Justice Chapman, who persuasively argued that the majority had extended the "at issue" too broadly and beyond the limits set forth by the Illinois Supreme Court in *Fischel & Kahn*, in derogation of the privilege. *Id.* ¶¶ 64-68. The dissent also viewed the privileged communications sought in *Daily* as not vital to the law firm's defense. *Id.* ¶ 65. The dissent adds more weight to our conclusion that the holding in *Daily* is a poor predictor of how the Illinois Supreme Court would decide the dispute presented by the parties here.

14

issue. 176 F.R.D. 269, 271 (N.D. Ill. 1997). The court in *Pyramid Controls* held in 1997 – three years before *Fischel & Kahn* – that Illinois law applied the "at issue" waiver doctrine to allow discovery of communications between the plaintiff and the subsequently engaged lawyer about when the plaintiff learned of its injuries. *Id.* at 274-75. But the *Pyramid Controls* court noted explicitly that it was divining Illinois law without much guidance from Illinois cases. *Id.* at 272. *Pyramid Controls* in fact "does not cite any Illinois decision addressing the at-issue waiver doctrine, and to the contrary, specifically states that there was none at the time of the decision[.]" *Dexia*, 231 F.R.D. at 275. *Pyramid Controls* court instead relied on federal cases, most notably *A.O. Smith Corp. v. Lewis, Overbeek & Furman,* No. 90 C 5160, 1991 WL 192200 (N.D. Ill. Sept. 3, 1991). *Pyramid Controls*, 176 F.R.D. at 272.[3] Cozen here relies on both *Pyramid Controls* and *A.O. Smith,* as well as *Lama.* (Resp. at 5-6.)

As this Court recognized in *Dexia*, when a federal court sitting in diversity jurisdiction determines Illinois law based on a prediction of how the Illinois Supreme Court will decide a question, the court looks at the course the relevant Illinois cases have charted. *Dexia*, 231 F.R.D. at 275. After noting that *Pyramid Controls* was decided without guidance from Illinois common law on the scope of the "at issue" waiver doctrine, the court in *Dexia* declined to follow *Pyramid Controls* because the Illinois appellate courts were trending in a different direction, toward allowing "at issue" waiver but more narrowly, to situations in which the sought-after material "is either the basis of the lawsuit or the defense thereof." *Id.*, citing *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 301 Ill. App. 3d 336, 340-41 (1st Dist. 1998). *rev'd*, 189 Ill. 2d 579 (2000). The Illinois Supreme Court's reversal of the Appellate Court decision in *Fischel & Kahn* supports

---

[3] Having been decided some nine years before *Fischel & Kahn*, *A.O. Smith* had that much less guidance from the Illinois cases than did *Pyramid Controls* about how the Illinois Supreme Court would come out on this question.

15

our conclusion that the Illinois Supreme Court is charting a course farther away from *Pyramid Controls* and firmly in the direction of preserving privilege when the sought-after communications were with counsel retained after the allegedly tortious conduct. And that is why *Lama* is unpersuasive, as it merely analogized to the similar facts in *Pyramid Controls* and then adopted the conclusion in *Pyramid Controls*, without considering how the Illinois Supreme Court in *Fischel & Kahn* has taken Illinois law in the opposite direction.

### III.     The Tolling Agreement's Significance in Today's Ruling.

The Court declines to reach Plaintiff's argument that because his Complaint surely relates back to the Amended Complaint, Cozen has no limitations defense, as the Complaint beat the limitations clock by several days. The parties remain free to present the relation back issue to the district court at some point, perhaps during litigation of a summary judgment motion concerning whether Cozen has a winning limitations argument. With the district court already having found (D.E. 31) that the Amended Complaint states a plausible equitable tolling claim, the Court does not view this motion to quash as an appropriate posture to take up the potentially case-dispositive relation back issue, and the Court does not need to do so in order to grant the motion to quash and deny Cozen the discovery of Plaintiff's privileged communications with lawyers Segal, Perlstein and Caruso.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to quash (D.E. 37) is granted in full. Procedurally, the Court might normally expect this motion to be filed after privileged documents have been identified in a log, allowing the Court to consider the privilege and waiver questions as

they arise with respect to particular documents. Here, though, the Court is comfortable reaching and granting the motion to quash the three subpoenas, because Cozen made very clear in the instructions to the subpoenas that Cozen demands compliance without regard to applicable attorney-client or work product privileges. (Mot., Exh. A (D.E. 37-1) at 8.)

**SO ORDERED.**

                                                      **ENTER:**

                                                      **GABRIEL A. FUENTES**
                                                      **United States Magistrate Judge**

**DATED: June 10, 2020**